FILED
 2010 Mar-31 PM 01:52
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| BELINDA SUE BLAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-G-2355-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Belinda Sue Blain, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

 (1) whether the claimant is currently employed;

 (2) whether she has a severe impairment;

 (3) whether her impairment meets or equals one listed by the Secretary;

 (4) whether the claimant can perform her past work; and

>    (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ David L. Stephens determined the plaintiff met the first two tests, but concluded that while the plaintiff's generalized anxiety disorder with panic attacks, pain disorder (chronic pain syndrome), asthma, and fibromyalgia are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 17].  The ALJ found that the plaintiff retains the residual functional capacity to perform a limited range of light work. [R. 18].   Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

4

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases.  These problems have been recognized by the courts.  In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features.  See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995).  Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.  Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988)

>(per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical

6

question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

As found by the ALJ, the plaintiff has the following "severe" impairments: "generalized anxiety disorder with panic attacks; pain disorder (chronic pain syndrome); asthma; and fibromyalgia." [R. 16].  ALJ David Stevens found that the plaintiff suffers from generalized anxiety disorder with panic attacks; pain disorder (chronic pain syndrome); asthma; and fibromyalgia. [R. 16].  He found the plaintiff has the RFC to perform light work with restrictions.  [R. 18].

At the ALJ hearing, the plaintiff testified that she cannot cope with her pain. [R. 221].  She testified that she has so much pain that she has difficulty understanding instructions.  [Id.].  She described her pain as an eight on a scale from zero to 10, "[b]ut at nighttime when I go to bed it's about a 10, 10½ I want to say because I'm in tears."  [R. 234].  The plaintiff testified that she cannot stand for more than 15 to 20 minutes at a time, and can sit for about 10 minutes.  [R. 222].  She lies down twice a day for about an hour and a half at a time.  [R. 234].  She testified that her daily activities include watching television and limited housework, but because she must rest often, it takes her all day to

do simple chores. [R. 226]. She lives with her mother, who does the grocery shopping and cooks for the plaintiff and her four children, whom she described as her "arms and legs." [R. 226-227]. The plaintiff also testified that she suffers from anxiety and panic attacks almost daily. [R. 231-233]. She said she has difficulty tolerating stress, and that she has problems with focusing and remembering. [R. 235].

Treatment records show that the plaintiff was seen by Muhammad W. Ali, M.D., on June 8, 2005, for pain management. [R. 124-126]. Dr. Ali found "[m]ultiple trigger points in cervicobrachial and lumbosacral regions." [R. 126]. He prescribed Maxal MLT for headaches, Topamax and Lortab 10 for pain, and Valium for muscle relaxation. [Id.]. An August 12, 2005, MRI of the lumbar spine indicated mild disc disease at L4-5 and L5-S1 with mild bilateral foraminal stenosis at L4-5. [R. 128]. A treatment note from February 1, 2006, indicates, "She has multiple medical problems and psychiatric d/o [disorders] particularly given her age." [R. 148]. On February 2, 2007, treating Dr. Hershkowitz noted that "[s]he does have all of the symmetric tender points of fibromyalgia." [R. 188]. Dr. Hershkowitz prescribed Lortab 10. [Id.]. Indeed, the plaintiff has been consistently prescribed Lortab for pain relief and Xanax for her nerves. [R. 126, 147-156, 186-199, 200-206].

The ALJ stated that he "considered the plaintiff's complaints of pain," but opined that "the medical evidence does not document a continuing impairment of incapacitating proportions, i.e., one which would reasonably produce pain of such intensity that the ordinary physical activity to perform basic work-related functions would

be impossible or contraindicated for a continuous period of twelve months or more." [R. 21]. He found the plaintiff's pain testimony not credible. [Id.]. The ALJ opined ". . . despite the claimant's pain complaints and testimony of limited functioning, she reported that she cared for her brother and five dogs. The claimant's ability to do this is inconsistent with her allegation of the degree of pain and limited functioning." [R. 20]. This conclusion is not supported by substantial evidence.

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform

minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

In order to find her able to work, the ALJ rejected the opinion of the commissioner's own consulting psychologist, Sally A. Gordon, Psy.D., who performed a psychological evaluation of the plaintiff on October 24, 2005:

**Diagnostic Impression**

Axis I:	Generalized Anxiety Disorder

                Panic Disorder Without Agoraphobia
                Pain Disorder Associated With Both Psychological
                Factors and a General Medical Condition

Axis II:       R/O [rule out] Borderline Intellectual Functioning

Axis III:      Fibromyalgia, asthma, migraine headaches,
                GERD, IBS, herniated discs, chronic pain,
                anodontia

Axis IV:      Functional Difficulties secondary to medical
                problems, illiteracy, unemployment, inadequate
                finances

Axis V:       GAF = 55

[R. 134]. Dr. Gordon stated that the plaintiff "was cooperative with all aspects of this evaluation, displayed good motivation, and there was no evidence of an attempt to embellish her symptoms or otherwise provide misleading information." [R. 135]. Also, ". . . her statements are considered to be fully credible." [R. 132]. After the examination, Dr. Gordon concluded with this prognosis:

> Ms. Blain presents with complaints of multiple health problems, chronic pain, and a history of anxiety and panic attacks in response to her medical issues, functional limitations, and psychosocial stressors. <u>Her adaptive functioning is severely impaired and she is able to accomplish only minimal ADLs and IADLs and otherwise relies on her children and sister for assistance</u>. She reports impaired cognitive functioning (e.g., poor memory, inability to concentrate, and periods in which her mind goes blank), and emotional lability. <u>She is likely to have difficulty learning, remembering and following through on work instructions due to her preoccupation with pain</u>. She should be able to get along [with] coworkers and accept supervision well under optimal conditions <u>but she may become irritable and overly emotional upon slight provocation when she becomes fatigued and weakened by pain</u>. <u>Her current tenuous emotional control suggests that she is likely to become more symptomatic in response to even minimal work pressures</u>. Per her reported physical incapacitation, she does not appear

able to live independently and her reported learning difficulties and recent cognitive disturbances suggest that she does not have the capacity to manage her financial benefits.

[R. 135](emphasis added)

The ALJ gave Dr. Gordon's opinion little weight because it "appears to be primarily based on subjective rather than objective evidence. . . ." [R. 22]. The ALJ's reasoning makes it clear that he is substituting his own opinion for that of his own consulting psychologist. In cases involving mental illness, the opinions of mental health professionals are especially important.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

13

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians</u>: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.
>
> Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
> Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Stephens has abused his discretion by substituting his own medical judgments for those of his own consulting

psychologist. The ALJ cites to the evaluation by a non-examining medical consultant to support his rejection of the examining psychologist. [R. 22]. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

The vocational expert ("VE") was asked whether an individual unable to sustain sitting, standing or walking in any combination for an eight-hour workday could perform any work in the national economy. [R. 239]. The VE testified that these restrictions would preclude work. [Id.]. The court concludes that substantial evidence does not support the ALJ's decision not to credit the plaintiff's pain testimony, and to ignore the opinion of the Commissioner's examining psychologist. Based upon her pain testimony, the opinion of Dr. Gordon, and the testimony of the VE, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An

appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 31 March 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.